IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JOHNNY B. FARRINGTON, JR., :
    Plaintiff, :
    v. : Civil Action No. 16-1206-RGA
CORPORAL J. SILVA, et al., :
    Defendants. :

Johnny B. Farrington, Jr., Sussex Correctional Institution, Georgetown, Delaware; Pro Se Plaintiff.

Michael F. McTaggart, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware; Counsel for Defendants Jesse Silva and Margaret O'Bara.

**MEMORANDUM OPINION**

December 28, 2018
Wilmington, Delaware

/s/ Richard G. Andrews
**ANDREWS, U.S. District Judge:**

Plaintiff Johnny B. Farrington, Jr. ("Farrington"), an inmate at the Sussex Correctional Institution, in Georgetown, Delaware, filed this action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and has been granted leave to proceed in *forma pauperis*. Defendants Sergeant Margaret O'Bara ("O'Bara") and Corporal Jesse Silva ("Silva") (together "Defendants") move for summary judgment. (D.I. 49). Plaintiff opposes and has filed several motions seeking discovery and a motion to amend. (D.I. 32, 36, 37, 47). Briefing on the matters is complete.

I. **BACKGROUND**

Farrington alleges he was subjected to excessive force by O'Bara, a Capitol Police Sergeant, and Silva, a Capitol Police Corporal, on October 19, 2016. The Complaint alleges this occurred when Farrington was being escorted to the Capitol Police Office. (D.I. 1 at 5). Plaintiff states that he "pulled away" from O'Bara. (*Id.* at 5). Then, he was tased in the stomach by Silva, instantly fell to the ground, and an unknown officer put what felt like a gun to the back of his neck. (*Id.*). Farrington turned his head and Silva said, "stop resisting." (*Id.*). Farrington alleges that Silva and the other unknown officer began tasing Farrington and continued to tase him until he defecated on himself. (*Id.*). The Complaint alleges that Farrington had taser marks on the back of his neck to support his allegations. (*Id.*). The Complaint alleges that Farrington was dragged into the Capitol Police Office, dropped on the floor, and Silva cursed at him. (*Id.* at 5-6). The Complaint alleges that O'Bara was the superior officer who oversaw what was being done to him. (*Id.*).

1

The evidence of record indicates that on October 19, 2016, O'Bara was assigned to the Sussex County Courthouse. (D.I. 50 at Ex. 1 at 1). That morning, at 8:35 a.m., she responded to a call of an active capias for Farrington who was scheduled to appear in Superior Courtroom #2. (*Id.*). O'Bara met Farrington on the second floor of the courthouse and told him that he had an active warrant from the Laurel Police Department. (D.I. 39-1 at 138). O'Bara told Farrington he would have to go to the Capitol Police office on the first floor of the courthouse to be processed. (D.I. 39-1 at 138; D.I. 50 at Ex. 1 at 3). Farrington was cuffed with his hands behind his back, and he and O'Bara walked towards the lobby of the courthouse to the front of the building, near the metal detector. (*Id.*). At that point, Farrington pulled away from O'Bara and ran out the front doors of the courthouse. (*Id.* at 1-2). As Farrington ran out of the courthouse he dragged O'Bara down the front steps of the courthouse and they landed near a grassy area in front of the building. (*Id.* at 2). Farrington's arm or handcuffs were entangled with O'Bara's arm and they were on the ground. (D.I. 39-1 at 139).

According to Farrington, on October 19, 2016, he appeared at the Sussex County Courthouse for a final case review on an assault third charge. (D.I. 50, at Ex. 2 at 17). When he arrived at the courthouse, O'Bara told him she had to detain him for an outstanding warrant from Laurel Police Department, and she handcuffed him. (*Id.* at 19). Farrington testified that while being escorted, he flashbacked to an incident with another police department, freaked out, pulled away from her, and ran for the door. (*Id.* at 20-21).

2

According to Silva, he and Corporal Davidson ("Davidson"), another Capitol Police Officer, responded outside to assist O'Bara. (D.I. 50 at Ex. 1 at 1). Earlier, Silva had heard the dispatch from the Capitol Police Communications Center and knew that Farrington was wanted on an outstanding capias on charges of assault second degree and resisting arrest with force or violence. (*Id.* at 1). Silva had seen Farrington begin to run out of the courthouse, use his body to force open the front doors of the courthouse, and drag O'Bara down the front steps. (*Id.* at 2).

Silva saw Farrington on the ground with his arm entangled with O'Bara's arm. (*Id.* at 2). At that point, Silva deployed his taser two times seconds apart, both times in the right side of Farrington's body. (D.I. 50 at Ex. 1 at 2; D.I. 59 at Ex. 1). According to Silva, he deployed his Taser a second time because he was fearful that Farrington was still attempting to escape and would attempt to regain his footing and cause more harm to O'Bara. (*Id.* at 2). Silva states that he deployed his Taser to gain compliance in a short period of time. (*Id.*). Silva states that he did not tase Farrington in the neck. (*Id.*).

According to Farrington, once he was off the steps, Silva deployed his Taser and, as he was lying on the ground, he felt someone come up and put something on the back of his neck. (D.I. 50 at Ex. 2 at 21). Farrington testified that the first time he was tased it was justified, and he brought it on himself because he should not have run. (*Id.* at 40, 44, 49). Farrington testified that Silva was hollering, "Stop resisting," and Silva tased him a second time as he was laying on the ground. (*Id.* at 40). According to Farrington, he was "tased in the back of his neck as well." (*Id.* at 21, 40). Farrington testified that he was tased until he defecated on himself. (*Id.*). Farrington testified that

3

someone other than Silva tased him in the back of his neck. (*Id.* at 42). According to Farrington there was no need to tase him a second time. (*Id.* at 44).

Silva assisted Davidson in removing and freeing O'Bara's arm from Farrington's arm. (D.I. 50 at ex. 1 at 2). Silva, with the assistance of the Superior Court bailiffs, lifted Farrington and took him inside to the Capitol Police Office. (*Id.*). Silva saw that O'Bara had multiple cuts and contusions, and he saw no injuries on Farrington. (D.I. 39 at 29; D.I. 50 at ex. 1 at 2). Farrington only complained of complications with his breathing. (D.I. 50 at ex. 1 at 2). EMS medical staff responded to treat Farrington for possible injuries, but no visible injuries were located. (*Id.* at 3). Farrington was taken by ambulance to the Nanticoke Hospital, treated, and released. (*Id.*). At the hospital Farrington made repeated statements that he did not want to go to jail and wanted to see his mother in heaven. (*Id.*). Later he made other statements about wanting to "jump in front of traffic." (*Id.*). Hospital records indicate that Farrington had abrasions and rib and chest contusions. (D.I. 50 at Ex. 2 at medical records). There were no reported neck injuries. (*Id.*).

Courthouse security cameras captured this incident. (D.I. 51). Silva reviewed the DVD and states that it is a fair and accurate depiction of the events. (D.I. 50 at Ex. 1 at 3). I have also reviewed the DVD, which shows three camera angles. Farrington testified his claim is an excessive force claim in violation of his constitutional rights because he was tased excessively. (*Id.* at Ex. 2 at 44). Following the October 19, 2016 incident, Farrington was charged with resisting arrest with force, and he pled guilty. (*Id.* at 58.)

## II. MISCELLANEOUS MOTIONS

### A. Discovery Motions

On April 10, 2018, the Court amended the discovery deadline for all discovery to be initiated so that it would be completed on or before June 15, 2018. (*See* D.I. 29).

On April 27, 2018, Farrington filed a motion for the Court to direct the Delaware Department of Correction give him a copy of his institutional medical records, pursuant to Rules 26 through 37 of the Federal Rules of Civil Procedure. (D.I. 32). The motion will be denied. The proper discovery method to obtain records for a non-party is to issue a subpoena for those records. It would be inappropriate for the Court to order a non-party to produce records absent the issuance of a subpoena and a refusal to comply with the subpoena. *See* Fed. R. Civ. P. 45.

On May 24, 2018, Farrington filed a motion for a subpoena for the Court to direct the Department of Safety and Homeland Security (Capitol Police) to provide him any and all investigative reports relevant to this case. (D.I. 36). On the same day, he filed a motion for a subpoena for the Court to direct Nanticoke Memorial Hospital to provide his medical records from his October 19, 2016 admittance. (D.I. 37). Defendants responded and advised the Court that it provided Farrington the records he sought via subpoena. (*See* D.I. 41). The documents sought by Farrington are contained in the Court record. Therefore, the motions for issuance of a subpoena (D.I. 36, 37) will be dismissed as moot.

### B. Motion to Amend

Farrington filed a motion to amend the complaint on June 12, 2018, three

5

days before the June 15, 2018 deadline.[1] In his motion, Farrington acknowledges that the claims raised in the original complaint are directed primarily towards Silva's actions and that O'Bara was mentioned because she was the superior officer. Farrington states that he did not complain of any inappropriate behavior by O'Bara because he "was just severely tased and [] had no recollection of anything she may have done." (D.I. 47). It appears that Farrington filed the motion because during the investigation, witnesses gave statements that, after the escape attempt, O'Bara grabbed Farrington by the throat and stated, "I should fucking kill you." (*Id.*).

Defendants oppose the motion on the grounds that: (1) the motion to amend was filed three days after the close of discovery and is untimely; (2) Farrington did not appear to have memory problems when he filed the original complaint; (3) when Farrington was deposed, he was questioned about the basis for his claims, and he responded that his claims revolved around injuries due to tasing; (4) when Farrington was deposed, he indicated that he had sued O'Bara because she was the superior officer that day and was responsible for the actions of the other officers; and (5) the

---

[1] The computation of time for a *pro se* inmate's filing is determined according to the "mailbox rule" and deemed filed as of the date it was delivered to prison officials for mailing to the court. *See Houston v. Lack*, 487 U.S. 266 (1988); *Burns v. Morton*, 134 F.3d 109, 112 (3d Cir. 1998); *Gibbs v. Decker*, 234 F. Supp. 2d 458, 463 (D. Del. 2002). Here, the motion to amend was signed on June 12, 2018, and its envelope is post-marked June 14, 2018. Therefore, the motion was delivered to prison authorities for mailing some time between June 12, 2018 and June 14, 2018. Giving Farrington the benefit of the doubt, the Court concludes the motion was filed on June 12, 2018, the date it was signed, and the earliest date it could have been delivered to prison officials for mailing.

medical records do not support Farrington's claim he suffered from memory loss. (D.I. 48).

In his reply to Defendants' opposition, Farrington states that granting the motion would not require a second round of discovery because all of the information was discovered during the initial discovery process. He also states that motion is not untimely as he filed it on June 12, 2018, three days before the discovery cut-off date. Attached to the reply are excerpts from the Delaware Capitol Police investigation. (D.I. 61). Complete investigative reports are found at Docket Item 39, filed May 29, 2018, and Docket Item 43, filed June 4, 2018.

Pursuant to Fed. R. Civ. P. 15(a)(2), courts "should freely give leave [to amend] when justice so requires." However, "undue delay, bad faith, dilatory motive, prejudice, [or] futility" could all "justify a denial of leave to amend." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted" under the standard of Federal Rule of Civil Procedure 12(b)(6). *Lejon-Twin El v. Marino*, 722 F. App'x 262, 265 (3d Cir. 2018) (quoting *Shane*, 213 F.3d at 115). In evaluating whether a plaintiff has stated a claim upon which relief could be granted, the court accepts "all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Bronowicz v. Allegheny Cnty.*, 804 F.3d 338, 344 (3d Cir. 2015).

The motion will be denied. The motion does not comply with Local Rule 5.1 which provides that a party who moves to amend a pleading shall attach to the motion:

(1) the proposed pleading as amended, complete with a handwritten or electronic signature; and (2) a form of the amended pleading which indicates in what respect it differs from the pleading which it amends, by bracketing or striking through materials to be deleted and underlining materials to be added. O'Bara did not provide a copy of the proposed amended complaint. The motion does not indicate what type of claim he seeks to add against O'Bara, and I am not inclined to guess. I do note that the DVD does not appear to offer any basis for a complaint against O'Bara. I further note that the statement attributed to O'Bara after the incident is not the basis for a claim.

Finally, the motion is untimely. Plaintiff explains that he did not raise the foregoing allegations against O'Bara because he was "just severely tased and [] had no recollection of anything O'Bara may have done." (D.I. 17)[2] Farrington argues that granting the motion would not require a second round of discovery because all the information was discovered during the initial discovery process. However, raising a new claim at this late date without allowing Defendants to conduct additional discovery would be materially prejudicial to them. Farrington fails to show good cause or excusable neglect in seeking to amend at this late date. Therefore, the motion to amend will be denied

---

[2] Farrington had no complaints of inappropriate behavior by O'Bara when he was interviewed by the Delaware Capitol Police on December 28, 2016. (See D.I. 43 at 3). Nor do his answers to Defendants' interrogatories, filed September 17, 2017, mention the facts he seeks to now raise. In Interrogatory No. 3, he was asked for the complete factual basis for each allegation. In Interrogatory No. 4, he was asked for the basis of any claim that Defendants violated Farrington's constitutional rights. (D.I. 22). Finally, the motion to amend makes no mention of any injuries Farrington sustained due to O'Bara's alleged conduct.

8

## III. MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on the grounds that: (1) Farrington cannot prevail against O'Bara as there is no respondeat superior liability under 42 U.S.C. § 1983; (2) the use of the taser by Silva met constitutional standards, the first use of taser was reasonable, the second use of the taser was reasonable to gain control of Farrington, and Farrington never identified the officer who allegedly tased him in the neck; and (3) Defendants are shielded from liability under the doctrine of qualified immunity. Farrington opposes the motion for summary judgment on the grounds that there are genuine issues of material fact.[3]

### A. Standards of Law

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49 (1986).

### B. Discussion

---

[3] Defendants' filed a reply and Farrington filed a sur-reply. (D.I. 58, 63). Defendants move to strike the sur-reply as filed in derogation of Local Rule 7.1.2(b). (D.I. 64). The Court will deny the motion given Farrington's *pro se* status.

### 1. Respondeat Superior

Farrington testified that his claims lie under a theory of excessive force due to tasing, and he sued O'Bara because she was the superior officer at the scene and responsible for the actions of everyone. Defendants move for summary judgment on behalf of O'Bara under a respondeat superior theory.

There is no respondeat superior liability under § 1983. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). A defendant in a civil rights action "cannot be held responsible for a constitutional violation which he [ ] neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007); *see also Polk County v. Dodson*, 454 U.S. 312, 325 (1981). Such involvement may be "shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

Farrington's claim against O'Bara is based upon O'Bara's supervisory position. There is no evidence that O'Bara had any involvement in the tasing of Farrington. Rather, the evidence indicates that Farrington ran from O'Bara, pulled her down a flight of stairs causing injuries to O'Bara, and O'Bara never deployed a taser.[4] Summary judgment is appropriate on behalf of O'Bara, and the motion will be granted as to the claims raised against her.

### 2. Excessive Force

---

[4] The DVD makes it very clear that O'Bara was in no position during the relevant time to be supervising anyone.

10

Farrington alleges he was subjected to excessive force in violation of the Eighth Amendment. However, at the time of the occurrence Farrington was not a sentenced inmate. At the time he was an arrestee. Therefore, his claim is analyzed under the Fourth Amendment.[5] Defendants argue, first, that Silva did not use excessive force against Farrington and second, Silva is entitled to qualified immunity.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011); *see also Saucier v. Katz,* 533 U.S. 194 (2001).

The District Court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). The doctrine "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender,* 565 U.S. 535, 546 (2012).

---

[5] Excessive force claims arising out of an arrest are analyzed under the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386 (1989). Excessive force claims for pretrial detainees are analyzed under the Fourteenth Amendment. *Sylvester v. City of Newark,* 120 F. App'x 419, 423 (3d Cir. 2005). Excessive force claims for those convicted of a crime are analyzed under the Eighth Amendment. *Graham v. Connor,* 490 U.S. at 395 n.10.

11

The Court will first address the issue of whether there was a violation of Farrington's constitutional rights. Farrington concedes that the first time he was tased was an appropriate use of force. This occurred when Farrington ran out the courthouse doors while handcuffed, dragged O'Bara with him down the courthouse steps, and he and O'Bara were entangled on the ground. Farrington asserts that excessive force occurred when he was handcuffed behind his back, face down on the ground, Silva told him to stop resisting, and then tased him a second time. Farrington also contends he was tased in the neck by an unknown/unnamed individual. In light of the circumstances at the time of the alleged use of excessive force, the Court finds that there is no material factual dispute which could allow a trier of fact to find that Silva unlawfully used excessive force against Farrington.[6]

A police officer's "use of force contravenes the Fourth Amendment if it is excessive under objective standards of reasonableness." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386 (1989)). 'The test of reasonableness under the Fourth Amendment is whether under the totality of the

---

[6] Even if a violation did occur, the right at issue was not clearly established. In a non-precedential opinion a few months before the incident under consideration, the Third Circuit stated, "Our Court has not yet spoken in a precedential opinion about taser use. And we decline to do so here, as the District Court has not specifically identified the right allegedly violated and whether it was clearly established at the time Baum was tased." *Estep v. Mackey*, 639 F. App'x 870, 874 n.4 (3d Cir. 2016). Courts have found a clearly established right not to be tased when the suspect was unconscious, *see Smith v. City and County of Denver*, 2008 WL 724629, *6 (D.Colo. Mar. 18, 2008); and when the suspect for a minor non-violent crime was not warned, and was a non-violent passenger not fleeing or resisting arrest, *see Brown v. City of Golden Valley*, 534 F.Supp.2d 984, 995 (D.Minn. 2008). I am not sure exactly where the dividing line is for a clearly established right from a non-clearly established right, but I think Farrington is on the wrong side of it.

12

circumstances, 'the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Graham*, 490 U.S. at 397). Reasonableness must be evaluated from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Factors considered when deciding whether an officer's use of force is objectively reasonable include:

> the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight. A court in making a reasonableness assessment also may consider the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

*Kopec*, 361 F.3d at 776–77 (internal citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

In looking at the "totality of the circumstances," the record demonstrates that Farrington was under arrest for assault and resisting arrest. He was handcuffed and being escorted to the Capitol Police Office. He ran through the courthouse doors while O'Bara, who was escorting him, held on and ordered Farrington to stop. Farrington did not stop. Farrington dragged O'Bara down the courthouse steps, and she was injured.

13

Silva drew his taser and deployed it while Farrington and O'Bara were on the ground. Both Farrington and O'Bara were moaning. Silva ordered Farrington to stop resisting. Farrington continued to roll around. Silva was fearful Farrington was still attempting to escape and to regain his footing, and Silva believed that Farrington may have been holding on to O'Bara. Silva tased Farrington a second time. The two taser deployments were made within seconds of each other. Silva's Taser was deployed only twice.

In dispute is whether there was a third taser deployment on the back of Farrington. Both Farrington and Silva agree that Silva did not tase Farrington on the neck. Farrington testified that someone other than Silva tased him on the back of his neck. Given the dearth of evidence as to Silva's involvement in the alleged neck tasing, no reasonable jury could find for Farrington and against Silva on this issue.

The DVD provided by Defendants corroborates many of the events described above relevant to the use of force. Farrington is seen handcuffed behind his back running through the courthouse doors with O'Bara holding onto him, Both are seen falling down the courthouse steps. Silva has a taser drawn. Farrington and O'Bara are both on the ground moving about. The entire incident took place in a matter of seconds. (*See* D.I. 52).

The foregoing facts demonstrate that, looking at the totality of the circumstances, Silva was placed in a position of having to make a quick judgment and he was presented with a situation in which it appeared possible that Silva would gain his footing and continue his attempt to flee and/or injure O'Bara. In addition, he was aware that

Farrington had pending charges of assault and resisting arrest. The possibility of harm to O'Bara and the limited time in which to decide what actions were necessary are factors which weigh in favor of finding the use of force to be reasonable. *See, e.g., Brown v. Cwynar*, 484 F. App'x 676, 681 (3d Cir. 2012) (affirming a finding of qualified immunity involving a third taser use by an officer on a 73-year-old man resisting arrest in a shopping mall parking lot); *Woods v. Grant*, 665 F. Supp. 2d 438, 445 (D. Del. 2009) (multiple taser use on fleeing suspect not unreasonable use of force), *aff'd*, 381 F. App'x 144 (3d Cir. 2010).

Moreover, Farrington failed to offer any record evidence as to what other, less forceful, means were available and even concedes the first time he was tased it was warranted under the circumstances. *See Saucier*, 533 U.S. at 205 ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed."). And, finally, although Farrington was taken to the hospital, medical records indicate he was not seriously injured at the time as a result of being tased. *See Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997) (finding that although the absence of physical injury does not necessarily signify that the force has not been excessive, "the fact that the physical force applied was of such an extent as to lead to injury is indeed a relevant factor to be considered as part of the totality.").

Considering the totality of the circumstances, the Court finds that Silva's actions were reasonable under the circumstances. Based upon the evidence of record no

15

reasonable jury could find in favor of Farrington. Therefore, the Court will grant Defendants' motion for summary judgment as to the claims raised against Silva.

## IV. CONCLUSION

Based upon the above discussion, the Court will: (1) deny Plaintiff's motion for an order to direct the Department of Correction to release Plaintiff's records (D.I. 32); (2) dismiss as moot Plaintiff's motions for issuance of subpoenas (D.I. 36, 37); (3) deny Plaintiff's motion to amend (D.I. 47); (4) grant Defendants' motion for summary judgment (D.I. 49); and (5) deny Defendants' motion to strike Plaintiff's second answering brief (D.I. 64).

An appropriate order will be entered.